**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARGARET TIMM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 06-cv-1690 |
| | ) | |
| MANOR CARE, INC., a/k/a HCR | ) | |
| MANOR CARE d/b/a HEARTLAND | ) | |
| HOME HEALTHCARE AND | ) | |
| HOSPICE, | ) | |
| | ) | |
| Defendant. | | |

**MEMORANDUM OPINION AND ORDER OF COURT**

August 1, 2008

Presently before the Court for disposition is the MOTION FOR SUMMARY

JUDGMENT, with brief in support, filed by Defendant, Manor Care, Inc., a/k/a HCR Manor Care

d/b/a Heartland Home Healthcare and Hospice ("Manor Care") (Document Nos, 25 and 26,

respectively), the brief in opposition filed by Plaintiff, Margaret Timm (Document No. 31), and

the REPLY to Plaintiff's brief in opposition filed by Manor Care (Document No. 35).

The issues have been fully briefed and the matter is ripe for disposition. After a

careful consideration of the motion, the filings in support and opposition thereto, the memoranda

of the parties, the relevant case law, and the record as a whole, the Motion for Summary Judgment

will be granted in part and denied in part.

### Procedural Background

Plaintiff, Margaret Timm ("Plaintiff"), brought this lawsuit on December 21, 2006,

by the filing of a two-count Complaint against her former employer, Manor Care. Plaintiff alleges

that Manor Care discriminated against her by subjecting her to a hostile work environment and

that her employment was unlawfully terminated, both in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et. seq*.

Manor Care has filed the instant motion for summary judgment in which it contends that it is entitled to judgment as a matter of law on all of Plaintiff's claims because, *inter alia,* Plaintiff failed to timely file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") with respect to her hostile work environment claims and that she is unable to establish a *prima facie* case of unlawful termination. In the alternative, Manor Care argues that Plaintiff has not adduced any evidence from which a reasonable factfinder could disbelieve Manor Care's articulated non-discriminatory reason for the termination of Plaintiff's employment and, thus, summary judgment should be granted.

### BACKGROUND

As the law requires, all disputed facts and inferences are to be resolved most favorable to the Plaintiff.

In 1985, Plaintiff purchased a home health care agency known as Valley Home Health. At that time, Valley Home Health provided visiting nursing and home health aide services. Following the purchase, Plaintiff was the individual in charge of Valley Home Health.

Valley Home Health declared bankruptcy within six (6) months after Plaintiff's acquisition of the company. Valley Home Heath reorganized and, following bankruptcy proceedings, Plaintiff continued to operate the company.

In 1991, In Home Health, Inc. ("In Home Health") purchased Valley Home Health. In Home Health provided other product lines not previously provided by Valley Home Health and those new product lines were added to Plaintiff's portfolio of responsibilities. Specifically, In

Home Health added services in the areas of hospice services, pharmacy, and private duty nursing. Following the acquisition of Valley Home Health by In Home Health, Plaintiff continued to have day-to-day responsibility for operating In Home Health in the Pittsburgh region. Plaintiff reported to Lisa Weber, Vice President of Operations for In Home Health. Ms. Weber remained Plaintiff's supervisor until shortly after In Home Health was purchased by Manor Care.

Near the end of 2000, Manor Care purchased In Home Health and began operating the agency under the name of Heartland Home Healthcare and Hospice ("Heartland"). At that time, Plaintiff's job title was Director of Operations and, later, Administrator. Plaintiff had overall day-to-day responsibility for Heartland's operations in the Pittsburgh market. Manor Care's company practice mandated that each business unit have a separate administrator. As such, over the next two (2) years, Heartland separated the hospice division from Plaintiff's responsibilities and hired Janet Diehl as the Director of the hospice division. Heartland also established a sales division in the Pittsburgh market, which it placed under the control of Bill Eder, and, later, Gary Geis.

Shortly after Manor Care purchased In Home Health, Deborah McMonagle ("McMonagle") became Plaintiff's supervisor and remained so until Plaintiff's employment was terminated in March 2003. Plaintiff retained responsibility over Heartland's home care division in the Pittsburgh market. The services provided by the home care division included: Medicare home nursing care; medicare home health aide services; physical, occupation and speech therapy; and social services provided by social workers.

Plaintiff's formal job description included a duty to monitor compliance with federal and state regulatory agencies and other certifying bodies. According to Plaintiff, however,

McMonagle shifted Plaintiff's responsibility away from operations, which included compliance matters. Plaintiff was instructed to spend a minimum of 50% of her time on sales and marketing and the other half of her time was to be focused on the financial and collection activities of home care. Plaintiff was to monitor the financial performance of Heartland's Pittsburg branch, including the number of patient admissions, the impact of same on revenue, and reimbursements.

Plaintiff testified in her deposition that McMonagle told her that she was not to work on the accreditation process. She was informed that Tara Magruda ("Magruda"), the Director of Professional Services, would have responsibility for compliance with accreditation standards and accreditation surveys conducted by the Commonwealth of Pennsylvania and by outside certifying bodies, including the Community Health Accreditation Program ("CHAP").[1] Magruda, who reported directly to Plaintiff, was to have responsibility for the daily operations of the nursing staff and supervisors, while Plaintiff was to focus on sales and finance activities. Les Anderson, an employee in the corporate office, was to keep Plaintiff informed with regard to survey preparations.

In December 2001, the Commonwealth of Pennsylvania conducted a survey of Heartland's Pittsburgh home care division. As the Administrator of that division, Plaintiff participated in an exit interview with the surveyors in which they reported that they had found deficiencies in numerous areas. Heartland recognized that certain deficiencies were issues experienced nationally, such as failure to document medication side effects, delayed house visits by outsourced physical therapists due to insufficient manpower, and the failure to document

---

[1]     CHAP is an organization that accredits home care agencies such as the home care division of Heartland. During Plaintiff's employment with Heartland, CHAP was the accrediting body chosen by Manor Care to conduct compliance surveys.

discussions between nurses and physical therapists. Also some of the deficiencies were due to the disruptions associated with Manor Care's purchase of In Home Health and the subsequent organizational changes. The Commonwealth surveyors advised Plaintiff that they would return to survey again and seek proof that the deficiencies had been corrected.

Following the December 2001 state survey, CHAP conducted its own survey of the Pittsburgh home care operations from January 21 through 25, 2002. The CHAP survey also noted certain deficiencies, although apparently none of the deficiencies were "serious" as the CHAP surveyors recommended recertification. As a result of the CHAP survey, Plaintiff prepared a plan of action to correct the stated deficiencies.

Immediately following the CHAP survey, McMonagle conducted Plaintiff's performance review. Plaintiff's rating with regard to the category of "Monitors compliance with federal and state regulatory agencies and other certifying bodies" was lowered.

In June 2002, the Commonwealth of Pennsylvania conducted another survey of the Pittsburgh home care division of Heartland. Again, the Commonwealth noted several deficiencies, although Plaintiff contends that none of the deficiencies were serious. Following the results of the June 2002 survey, Plaintiff received a telephone call from McMonagle on June 10, 2002 in which McMonagle expressed her dissatisfaction with the survey results.

CHAP returned to Heartland to do another survey of the Pittsburgh home care division on March 24-28, 2003. Plaintiff met with the surveyors routinely during their survey. On the final day of the survey, the surveyors conducted an exit interview with Heartland's management team, including Plaintiff. Heartland was cited for eight (8) standard level deficiencies , which required the preparation of a plan of correction.

On Friday, March 23, 2003, shortly after the conclusion of the CHAP exit interview, McMonagle called Plaintiff and expressed dissatisfaction with the survey results. McMonagle informed Plaintiff that she had the balance of the weekend to decide whether to resign or Heartland would terminate her employment on Monday morning. On Monday, March 31, 2003, Plaintiff spoke via telephone with McMonagle and Deborah Smith ("Smith"), Heartland's Regional Director of Human Resources, and informed them that she would not resign her employment. As a result, Heartland terminated her employment, effective immediately. Plaintiff was 59 years of age at the time of her employment was terminated.

McMonagle testified during her deposition that the outcome of the accreditation survey performed by CHAP in March 2003 was the sole basis for the termination of Plaintiff's employment. Plaintiff contends that terminating her employment because of the March 2003 accreditation survey was a pretext for age discrimination. According to Plaintiff, Heartland's corporate office, which played an active role in management, ultimately had responsibility for operations and for Heartland's compliance with CHAP standards. Plaintiff contends that McMonagle had shifted her job responsibilities away from operations, including such compliance matters and that Magruda, was given responsibility for compliance with accreditation standards and accreditation surveys.

Following the termination of Plaintiff's employment, McMonagle assigned Janet Diehl, the existing administrator for the Pittsburgh hospice division, to assume Plaintiff's responsibilities. Ms. Diehl, who was age 53 at the time, served as administrator for the home care and hospice divisions until August 2003. At that time, she was promoted to assume McMonagle's position as Director of Regional Operations, following McMonagle's promotion to General

Manager.  At that point, the home care Administrator position was assigned to Daniel Peek, who was in his 50's.

On September 24, 2003, Plaintiff filed a General Information Questionnaire with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged both age and sex discrimination.  On September 25, 2006, the EEOC issued a "right to sue letter."  In this suit, Plaintiff alleges only age discrimination.

Allegations of Age Discrimination

Plaintiff contends that three Heartland employees, Smith, McMonagle, and Gary Geis, made age-related discriminatory comments to her, beginning in 2002.

As for Ms. Smith, Plaintiff alleges that Smith made age-related discriminatory comments to her during a dinner meeting between  the two of them in January or February 2002. Plaintiff contends that at the dinner conversation, Smith stated, "don't [you] think that [you]'ve been doing home care long enough, isn't it time to get out of the business?"  Another comment was, "Why would you want to stay working for Heartland after working for In Home  Health? Don't you think it's time to start moving on?"  Plaintiff testified at her deposition that during the dinner Smith made other statements which suggested that Plaintiff should consider retirement and informed Plaintiff that her salary was higher than others in the company with similar job descriptions and that this posed a "difficulty."

Plaintiff also contends that in telephone conversations with Smith or when Smith visited the Heartland's Pittsburgh branch, following the January / February 2002 dinner, she would repeatedly make age-based comments, such as "Aren't you getting too old for this?  Don't you want to go do something else with your life."  Timm Depo. I at 85.  Plaintiff also alleges that

Smith made discriminatory statements about her to Magruda and Janet Nichols, such as "she looks tired" and "do you think that she is too old to keep on doing this?" *Id.* at 81-83.

As for McMonagle, Plaintiff alleges that McMonagle made discriminatory, age-related comments to her in at least two (2) telephone conversations in the spring or summer of 2002 or "a little bit later." According to Plaintiff, McMonagle commented about her age, appearance, and inability to do her job because of her age. Specifically, McMonagle told Plaintiff that a job applicant had told McMonagle that Plaintiff "looked old" and that Plaintiff "looked ready for retirement." McMonagle then stated, "How do you look? Are you tired? Are you not ready for this job?" After a subsequent interview of another candidate, McMonagle told Plaintiff that this applicant had told McMonagle that Plaintiff was a positive person or an asset to Heartland's Pittsburgh branch. McMonagle then stated according to Plaintiff, "I guess that means you really aren't too old to do your job." Timm Depo. I at 87 - 91. Plaintiff contends that she told McMonagle that she was not tired and that she planned to work until age 65.

Plaintiff also testified that McMonagle made discriminatory age-related statements regarding her to Magruda and Nichols, such as "Margaret looks tired and ready for retirement."

Plaintiff also alleges that Gary Geis ("Geis") made discriminatory age-related comments to her in the spring, summer or fall of 2002. Geis stated, "Don't you think you're too old for all of this change? Why don't you retire? Why don't you do something else, get out of the rat race." *Id.* at 91. Additionally, according to Plaintiff, Geis made discriminatory age-related comments about other employees as well. Specifically, Geis was very critical of the appearance and energy level of one of his salespeople, Mary Anne O'Malley. According to Plaintiff, Geis said that O'Malley looked old and that her appearance was not appealing.

8

By her own admission, Plaintiff did not follow Heartland's harassment reporting procedure and never informed anyone at either the corporate or local level of Manor Care or Heartland about these purported comments. However, Plaintiff contends that she did not report these comments as it would have been futile, because she would have had to report the statements to the very persons who had made them, *i.e.,* namely Smith of Human Resources and McMonagle, her supervisor. Further, she did not utilize the company hotline because of her own past experiences that such hotline calls do not remain confidential. Based on her own experience, Plaintiff believed that both Smith and McMonagle would have received the information that she had reported on the hotline.

Plaintiff also contends that there was a pattern of Heartland preferring younger employees and discriminating against older employees. For example, Plaintiff contends that at least two other employees, both over forty (40) years of age, were terminated on account of their age, *to wit:* Mary Ann O'Malley and Marcia Stewart.

## STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of*

*West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

   With respect to summary judgment in discrimination cases, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987). The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory or retaliatory purpose. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 525 (3d Cir. 1992), *cert. denied*, 510 U.S. 826 (1993).

   The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

<h2 style="text-align:center">D<small>ISCUSSION</small></h2>

   The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions,

10

or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1).  The

plain language of the ADEA makes it clear that the prohibitions contained therein are "limited to

individuals who are at least 40 years of age." 29 U.S.C. § 631(a).

Since this is a federal employment discrimination case in which no direct evidence of

discrimination is presented, the analysis of the United States Supreme Court in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v.*

*Burdine*, 450 U.S. 248 (1981), provide the formulation for allocating the requisite burdens of

proof and production for purposes of the pending motion for summary judgment.[2]  Generally

speaking, a plaintiff who has no direct evidence of discrimination must establish a *prima facie*

case of discrimination. *McDonnell Douglas*, 411 U.S. at 802-803.  If a *prima facie* case is

established, the defendant must then articulate a legitimate, nondiscriminatory reason for treating

the plaintiff in an adverse manner. *Id.*  If the defendant articulates a legitimate, nondiscriminatory

reason for the adverse treatment, the plaintiff can defeat a motion for summary judgment by

pointing to some evidence from which a rational finder of fact could reasonably either disbelieve

the employer's articulated explanation or "believe that an invidious discriminatory reason was

---

[2]     The Supreme Court has not held that the *McDonnell Douglas/Burdine* framework is
applicable to ADEA cases. Instead, it has assumed *arguendo* that the *McDonnell
Douglas/Burdine* framework applies in this context.  *Smith v. City of Jackson*, 544
U.S. 228, 252 (2005) (O'Connor, J., concurring in the judgment); *Reeves v.
Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000); *O'Connor v.
Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). The United States
Court of Appeals for the Third Circuit, however, has held that the *McDonnell
Douglas/Burdine* burden-shifting framework applies in ADEA cases that do not
involve direct evidence of age discrimination. *Keller v. Orix Credit Alliance, Inc.*,
130 F.3d 1101, 1108 (3d Cir. 1997) (en banc ).

more likely than not a[ ] determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994).  The plaintiff "may succeed in this either directly by persuading the court [for purposes of summary judgment] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256.

The familiar *McDonnell Douglas/Burdine* burden-shifting framework does not apply if there is direct evidence of discrimination.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).  "Direct evidence" is evidence that is "so revealing of discriminatory animus that it is not necessary to rely on any presumption from the *prima facie* case to shift the burden of production." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 n. 4 (3d Cir. 1995).  In such cases, there is no need for an inference of discrimination, since the discrimination is readily apparent.

Where the *McDonnell Douglas/Burdine* framework does apply, "the precise elements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.' " *Swierkiewicz,* 534 U.S. at 512 (*quoting Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).   In *Jones v. School District of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999), the United States Court of Appeals for the Third Circuit explained that "the elements of a *prima facie* case depend on the facts of the particular case [,]" and that "a *prima facie* case cannot be established on a one-size-fits-all basis." Thus, "the prima facie test remains flexible and must be tailored to fit the specific context in which it is applied." *Sarullo v. United States Postal Service*, 352 F.3d 789, 797-798 (3d Cir. 2003).

In *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996), the Supreme Court held that the statutory language limiting the protection of the ADEA to those who

have attained the age of forty is relevant for no purpose other than determining whether a plaintiff

is within the class of persons entitled to statutory protection. *O'Connor*, 517 U.S. at 313 ("Because

the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a

replacement is substantially younger than the plaintiff is a far more reliable indicator of age

discrimination than is the fact that the plaintiff was replaced by someone outside the protected

class."). The Supreme Court explained the relationship between the substantive provisions of the

ADEA and 29 U.S.C. § 631(a)'s delineation of the protected class as those who have reached the

age of forty:

> The discrimination prohibited by the ADEA is discrimination "because
> of [an] individual's age," 29 U.S.C. § 623(a)(1), though the prohibition
> is "limited to individuals who are at least 40 years of age," § 631(a).
> This language does not ban discrimination against employees because
> they are aged 40 or older; it bans discrimination against employees
> because of their age, but limits the protected class to those who are 40
> or older. The fact that one person in the protected class has lost out to
> another person in the protected class is thus irrelevant, so long as he has
> lost out <u>because of his age</u>. Or to put the point more concretely, there
> can be no greater inference of age discrimination (as opposed to "40 or
> over" discrimination) when a 40-year-old is replaced by a 39-year-old
> than when a 56-year-old is replaced by a 40- year old. Because it lacks
> probative value, the fact that an ADEA plaintiff was replaced by
> someone outside the protected class is not a proper element of the
> *McDonnell Douglas* prima facie case.

*O'Connor,* 517 U.S. at 312 (emphasis in original).

Assuming that the plaintiff in a given case is within the class of persons protected

under the ADEA (i.e., someone who has attained the age of forty) and is alleging that the

defendant took an adverse employment action against him or her because of his or her advanced

age, the dispositive question is whether the plaintiff's age "actually motivated" the defendant's

adverse employment decision. *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 512

(3d Cir. 2004). In this context, age can be said to have "actually motivated" the defendant's decision if it played a role in the decisionmaking process and "had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000).

A.      *Hostile Work Environment Claim*[3]

The basis of Plaintiff's hostile work environment claim is that she was allegedly subjected to "numerous, intermittent comments" regarding her age.

Generally, in a deferral state such as Pennsylvania, a plaintiff bringing a claim under the ADEA for employment discrimination must filed a Charge of Discrimination ("Charge") with the EEOC within 300 days of the last alleged discriminatory act. *See Ruehl v. Viacom, Inc.*, 500 F.3d 375, 382-282 (3d Cir. 2007); 29 U.S.C. § 626(d). A failure to do so must result in the dismissal of a plaintiff's claims for failure to exhaust administrative remedies. *See Ruehl,* 500 F.3d at 382-83.

The Third Circuit has acknowledged that documents other than a formal charge, if verified, may satisfy the "charge" requirement. *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 261 (3d Cir. 2006). For the purpose of this Opinion only, Manor Care has agreed that the Questionnaire filed by Plaintiff with the EEOC constitutes the requisite filing of a Charge. Def's Memo. at 7. *See also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1320 (3d Cir. 2001) (outlining the facts a court should generally examine in determining whether an intake questionnaire or similar document will function as a charge in certain circumstances).

---

[3]      It is as yet unsettled whether the Third Circuit recognizes "hostile environment claims" under the ADEA. *Glanzman v. Metropolitan Management Corp.*, 290 F. Supp. 2d 571, 581 (E.D. Pa. 2003). For the purpose of this case, the Court will assume *arguendo* that a plaintiff can proceed under the ADEA in accordance with such a theory.

Manor Care argues, however, that Plaintiff's claims for hostile work environment should be dismissed as a matter of law because her Charge was not filed with the EEOC within 300 days of the last alleged discriminatory comment(s). The Court agrees.

Plaintiff filed her "Charge" with the EEOC on September 24, 2003. *See* Pl's Exh. 10. In the narrative description of the alleged incidents of discrimination, Plaintiff states that she "was subjected to numerous, intermittent comments regarding my age, such as 'I looked old' and 'was just waiting to retire,' 'I look tired' and 'isn't this too much for you? I really was fired because my employer believed that productivity & competence decline with age; the co. thought I looked 'tired. . . .'" No where in the narrative statement does Plaintiff state who allegedly made these statements nor does she specify the dates these alleged statements were made.

The Court notes that based on the Questionnaire alone it is difficult to pin down the factual basis for Plaintiff's hostile work environment claims. However, in her Amended Complaint, Plaintiff alleges that Deborah Smith, Regional Human Resource Representative, made discriminatory age-related comments while the two were having dinner outside of work in January or February 2002;[4] that Deborah McGonagle, her supervisor, made age-related comments in at least two telephone conversations in the spring or summer of 2002 or "a little bit later;" and Gary

---

[4] In her deposition, Plaintiff testified that Tara Magruda, Director of Professional Services, told her that Ms. Smith also had made age-related comments about Plaintiff to Ms. Magruda, but Plaintiff was unable to provide the specifics of the alleged statements or the dates when these alleged statements were made. She testified that Ms. Magruda told her about the comments "in the spring, maybe summer of 2002, perhaps later." Pl Depo. at 83. Plaintiff also testified that Ms. Smith made additional "subtle" age-related comments directly to her in phone conversations "or when she would be in the branch," but again the evidentiary record contains no specific dates of when these statements were made.

15

Geis, Director of Business Development, made age-related discriminatory comments to her in the "spring, summer or fall of 2002."[5]

It is undisputed that Plaintiff filed her Charge with the EEOC on September 24, 2003. Accordingly, any alleged incidents of discrimination which occurred before November 27, 2002 are time barred. At her deposition, the only specific date of alleged discriminatory comments identified by Plaintiff were those allegedly made by Deborah Smith in either "January or February 2002," and clearly these are time barred.[6] Accordingly, Plaintiff's hostile work environment claims must be dismissed for failure to exhaust administrative remedies. *See Ruehl*, 500 F.3d at 382-83.

   B.   *Unlawful Termination Claims*

In order for Plaintiff to establish a *prima facie* case of unlawful termination under the ADEA, she must show that: (1) she was in the class of persons protected under the statute (i.e., she was "at least 40 years of age" under § 631(a)); (2) she was qualified for the position at issue;

---

[5]   In her Response to the summary judgment motion, Plaintiff also contends that discriminatory comments "occurred up to four (4) months before she was terminated in March 2003;" however, Plaintiff again does not specify the factual particulars or dates of these alleged statements. *See* Pl's Response at 17.

[6]   Plaintiff's allegations that Deborah McGonagle and Gary Geis made discriminatory statements in the "spring, summer or fall" of 2002 simply cannot be construed to provide sufficient notice to Manor Care of the time frame in which these statements were allegedly made.

(3) she suffered an adverse employment action; and (4) the circumstances were such that a reasonable person could draw an inference of age discrimination.[7]

If Plaintiff establishes a *prima facie* case, the burden shifts to Manor Care to articulate a legitimate, non-discriminatory reason for its employment decision. Once Manor Care establishes such a reason, Plaintiff must point to specific evidence of record from which a reasonable factfinder either (i) could disbelieve Manor Care's articulated non-discriminatory reasons for the termination of Plaintiff's employment; or (ii) could believe that discriminatory animus was more likely than not a determinative cause of the termination of Plaintiff's employment. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Manor Care contends that summary judgment should be granted in its favor because Plaintiff cannot establish a *prima facie* case of age discrimination or, in the alternative, there is no evidence of record from which a reasonable factfinder could either (i) disbelieve Manor Care's articulated non-discriminatory reason for the termination of Plaintiff's employment; or (ii) believe

---

[7] The Court states the fourth element broadly enough to encompass different circumstances in which an inference of age discrimination could reasonably be drawn. While some courts state the fourth element as requiring that the plaintiff show that he or she was treated differently than a similarly situated, sufficiently younger individual, such a showing is not required where there is other evidence which tends to support an allegation that age discrimination has occurred. These factors are relevant for their evidentiary value (or lack thereof) in creating an inference that age actually motivated (or did not motivate) the challenged decision. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-313 (1996). If the individual compared to the plaintiff is not similarly situated, or if he or she is not sufficiently younger than the plaintiff, the plaintiff can still satisfy the *prima facie* hurdle by presenting other circumstantial evidence that age actually motivated the employer's decision. *Fitzpatrick v. National Mobile Television*, 364 F. Supp. 2d 483, 491-492, n. 4 (M.D. Pa. 2005).

that an invidious discriminatory reason was more likely than not a determinative cause of the termination of Plaintiff's employment.

1.      *Prima Facie Case*

Manor Care does not contest Plaintiff's *prima facie* case with respect to elements one, two, and three. Manor Care has asserted, however, that Plaintiff has failed to establish the fourth and final element of her *prima facie* case, *to wit*:  she was replaced by a sufficiently younger person.  According to Manor Care, when Plaintiff was terminated from her employment, she was fifty-nine (59) years old; she was replaced by Janet Diehl, who was fifty-three (53) years old at the time.  Accordingly to Manor Care, the age difference between Plaintiff and Ms. Diehl  is only six (6) years, and is insufficient as a matter of law to establish a *prima facie* case of age discrimination.

However, as noted above, the Supreme Court has rejected the argument that an ADEA plaintiff in a discharge case must show that she was replaced by someone substantially younger.  *O'Connor,* 517 U.S. at 312.  As the *O'Connor* Court stated:   "The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant [to the *prima facie* case], so long as [s]he has lost out because of her age." *Id.* As the Court concluded:

> [T]he proper solution to the problem lies not in making an utterly irrelevant factor an element of the prima facie case, but rather in recognizing that the prima facie case requires "<u>evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion</u>...." *Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

*Id.* (emphasis in original).

Plaintiff contends that she has established the fourth element of her *prima facie* because "age discrimination can be inferred from the following evidence and inferences drawn therefrom:"

- "statements made by others, including Timm's direct supervisor who discharged her, that Timm was "getting too old for this," "looked old" and "looked ready for retirement," and that encouraged her to retire;"

- "a pattern in Defendant's workplace of terminating older employees and replacing them with younger employees;"

- "Defendant's claims that Timm was discharged based on the unfavorable results of an outside accreditation survey were called into question by testimony that Timm was not directly responsible for the accreditation process, and by the fact that younger employees who were responsible for the accreditation were treated more favorably and were not fired;" and

- "Defendant's firing of Timm despite her having received positive reviews, praise for her performance and bonus checks, and having been named an elite 'top 10 performer'."

Pl's Memo in Opp'n, at 8-9.

To be sure, the issue of whether Plaintiff has established a prima facie case of unlawful termination under the ADEA is a close call. However, as stated *supra,* Plaintiff's burden is not onerous at this stage and evidence that demonstrates an inference of discrimination in connection to the adverse employment action is sufficient. Thus, for the purpose of this summary judgment Memorandum Opinion only, the Court finds and rules that Plaintiff has established a *prima facie* case of unlawful termination under the ADEA.

2.  *Legitimate, Non-Discriminatory Reason*

Because Plaintiff has established a *prima facie* case of discrimination, the burden shifts to Manor Care to articulate a legitimate, non-discriminatory reason for the termination of

19

Plaintiff's employment. Manor Care asserts that Plaintiff's employment was terminated as a result of the poor showing by the Pittsburgh home health care division on the March 2003 accreditation survey performed by CHAP. The Court finds that Manor Care has met its burden and has offered a legitimate and non-discriminatory reason for the termination of Plaintiff's employment.

3.      *Pretext*

Under the *McDonnell Douglas* framework, because Manor Care has offered a legitimate and non-discriminatory reason for its employment decision, Plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that Manor Care's explanation was pretextual. *Reeves*, 530 U.S. at 143.

> Pretext is not demonstrated by showing simply that the employer was mistaken . . . Instead the record is examined for evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons.

*Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3d Cir.), *cert. denied*, 515 U.S. 1159 (1995). Our Court of Appeals for the Third Circuit has explained that to defeat a summary judgment motion, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Olson v. GE Astrospace,* 101 F.3d 947, 951-52 (3d Cir. 1996). Thus, in order to defeat a motion for summary judgment, Plaintiff must identify evidence that establishes a reasonable inference that Manor Care's proffered non-discriminatory explanation "is unworthy of credence.*" Hugh v. Butler County Family YMCA*, 418 F.3d 265, 268 (3d Cir. 2005).

20

The Court finds and rules that the Plaintiff's unlawful termination claim cannot be decided on the summary judgment record because key facts are in dispute. Specifically, there is a conflict in the record with respect to Plaintiff's role in the CHAP survey. The parties present contradictory evidence on this point.

Manor Care asserts that the outcome of the accreditation survey performed by CHAP in March 2003 was the sole reason for Plaintiff's termination from employment.

Plaintiff contends that she had been relieved of responsibility for the survey and for meeting the CHAP accreditation requirements. Plaintiff testified that in June 2002 and again in October 2002, her supervisor, Deborah McGonagle, told her that responsibility for the accreditation process had been shifted to Tara Magruda and Janet Nichols and that Plaintiff was instructed not to focus on operational issues, but rather to spend half of her time on sales and marketing, and the other half on financial and collection activities. According to Plaintiff, Les Anderson, an employee in the corporate office, was to keep her informed with regard to survey preparations.

Plaintiff also argues that the younger employees who were responsible for the survey results, Tara Magruda and Janet Nichols, were not terminated.

In order to determine whether Manor care's proffered reason for terminating Plaintiff is pretextual, it is necessary to assess the credibility of Plaintiff and Deborah McGonagle because their deposition testimony is in conflict. Because the "Court may not weigh the evidence or assess credibility," *MBIA Ins. Corp. v. Royal Indemn. Co.*, 426 F.3d 204, 209 (3d Cir. 2005), and since to survive summary judgment it is only necessary to determine that "the evidence presents a sufficient disagreement to require submission to the jury," *Anderson,* 477 U.S. at 251-52, the

21

Court finds and rules that summary judgment is not appropriate on Plaintiff's unlawful termination claim.

**CONCLUSION**

Viewing the facts in the light most favorable to Plaintiff, the Court finds that (i) Plaintiff has failed to exhaust her administrative remedies with regard to her hostile work environment claim and (ii) genuine issues of material key facts are in dispute with regard to Plaintiff's unlawful termination claim. Accordingly, the motion for summary judgment will be granted in part and denied in part.

An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MARGARET TIMM,                          )
                                        )
                  Plaintiff,            )
                                        )
        v.                              )        02: 06-cv-1690
                                        )
MANOR CARE, INC., a/k/a HCR             )
MANOR CARE d/b/a HEARTLAND              )
HOME HEALTHCARE AND                     )
HOSPICE,                                )
                                        )
                  Defendant.            )

**ORDER OF COURT**

AND NOW, this 1st day of August, 2008, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Motion

for Summary Judgment filed by Defendant, Manor Care, Inc., a/k/a HCR Manor Care d/b/a

Heartland Home Healthcare and Hospice, is **GRANTED IN PART AND DENIED IN PART** as

follows:

(i)     Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's

claims of hostile work environment brought pursuant to the Age Discrimination in Employment

Act;  and

(ii)    Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's

claims of unlawful termination brought pursuant to the Age Discrimination in Employment Act.

It is further **ORDERED** that Plaintiff shall file her Pretrial Statement on or before

**August 25, 2008**, and Defendant shall file its Pretrial Statement on or before **September 19,**

**2008.**

A pretrial conference is scheduled on **Friday, October 3, 2008 at 2:30 p.m.** in Courtroom 6C.  The conference shall be attended by an authorized representative of each party, together with trial counsel for each party.

BY THE COURT:

<u>s/Terrence F. McVerry</u>
United States District Court Judge

cc:        Christina G. Sloss, Esquire
Lynch Weis
Email: csloss@lynchweis.com

Krysia Kubiak, Esquire
Lynch Weis
Email: kkubiak@lynchweis.com

Daniel P. Lynch, Esquire
Lynch Weis
Email: dlynch@lynchweis.com

William J. Labovitz, Esquire
Lynch Weis, LLC
Email: wlabovitz@lynchweis.com

Robert B. Cottington, Esquire
Cohen & Grigsby, P.C.
Email: rcottington@cohenlaw.com